FILED IN OPEN COURT
APR - 5 2012
CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA )
) CRIMINAL NO. 1:12CR127
v. )
)
JOHN C. KIRIAKOU )
)
Defendant. )

# INDICTMENT

11-4 (Regular) Grand Jury - At Alexandria

## GENERAL ALLEGATIONS

THE GRAND JURY CHARGES:

At times material to this indictment:

### The Central Intelligence Agency

1. The Central Intelligence Agency ("CIA") was a United States government intelligence agency. The CIA's headquarters were at Langley, Virginia, in the Eastern District of Virginia. The CIA was responsible for, among other things, collecting information that revealed the plans, intentions and capabilities of the United States' adversaries and the bases for their decisions and actions, as well as conducting clandestine actions, at the direction of the President and his authorized designees, designed to preempt threats and achieve the United States' policy objectives.

2. The responsibilities of certain CIA employees required that their association with the CIA be kept secret; as a result, the fact that these individuals were employed by the CIA was classified. The responsibilities of other CIA employees required that, while their employment by the CIA was itself not necessarily secret,

their association with certain CIA programs and their particular activities on behalf of the CIA be kept secret; accordingly, such information was classified. Disclosure of the fact that such individuals were employed by the CIA, associated with certain CIA programs, or engaged in particular activities on behalf of the CIA, had the potential to damage the national security in ways that ranged from preventing the future use of individuals in a covert or clandestine capacity, to compromising clandestine actions and intelligence-gathering methods and operations, and to endangering the safety of CIA employees and those who dealt with them.

3. Those persons with security clearances granting them access to classified information were required by Title 18, United States Code, Section 793, and applicable rules, regulations, and orders, not to disclose classified information to persons not authorized to receive such information, and otherwise to exercise proper care to safeguard classified information against unauthorized disclosure. Classified information could only be shared with persons determined by an appropriate United States government official to be eligible for access to classified information, who had signed an approved non-disclosure agreement, and who possessed a "need to know."

4. National security information was classified as "Top Secret," "Secret" or "Confidential," as defined by Executive Order 12356, as superseded by Executive Order 12958 and amended by Executive Order 13292. Specifically, the designation "Top Secret" applied to information that, if disclosed without proper authorization, reasonably could be expected to cause exceptionally grave damage to the national security. The designation "Secret" applied to information that, if disclosed without

proper authorization, reasonably could be expected to cause serious damage to national security. The designation "Confidential" applied to information that, if disclosed without proper authorization, reasonably could be expected to cause damage to national security. Access to classified information could be further restricted through compartmentation in Sensitive Compartmented Information ("SCI") categories. Only individuals with the appropriate security clearance and additional SCI clearance(s) could have access to such classified information.

**The Defendant**

5. Defendant JOHN C. KIRIAKOU, a citizen of the United States and resident of Arlington, Virginia, was employed as an intelligence officer with the CIA from in or about 1990 through in or about 2004. In the course of his career, KIRIAKOU served at CIA headquarters in Langley, Virginia, including at the CIA Counterterrorism Center ("CTC"), and in various classified overseas assignments.

6. Defendant JOHN C. KIRIAKOU held a Top Secret security clearance with access to various SCI compartments, on account of his official responsibilities at the CIA. As a result, KIRIAKOU had regular access to classified and national defense information relating to CIA programs, operations, methods, sources, and personnel.

7. On or about January 10, 1990, in connection with the start of his employment as a CIA intelligence officer, defendant JOHN C. KIRIAKOU entered into various agreements with the United States, including the following:

a. As a condition of being granted access to classified information, defendant JOHN C. KIRIAKOU entered into a Secrecy Agreement, in which he agreed,

in pertinent part, as follows:

> I . . . hereby agree to accept as a prior condition of my being employed by, or otherwise retained to perform services for, the Central Intelligence Agency . . . the obligations contained in this agreement.
>
> I understand that in the course of my employment . . . I may be given access to information or material that is classified or is in the process of a classification determination . . . that, if disclosed in an unauthorized manner would jeopardize intelligence activities of the United States Government. I accept that by being granted access to such information or material I will be placed in a position of special confidence and trust and become obligated to protect the information and/or material from unauthorized disclosure.
>
> In consideration for being employed or otherwise retained to provide services to the Central Intelligence Agency, I hereby agree that I will never disclose in any form or any matter, to any person not authorized by the Central Intelligence Agency to receive it, any information or material . . . that I know is classified . . . or is in the process of a classification determination. . . .
>
> I understand that . . . the disclosure of information that I agreed herein not to disclose can, in some circumstances, constitute a criminal offense. . . .
>
> I understand that nothing in this agreement limits or otherwise affects any provision of criminal or other law that may be applicable to the authorized disclosure of classified information, including . . . section 793[ ] . . . of Title 18, United States Code . . . .

b. As a condition of being granted access to certain SCI, defendant JOHN C. KIRIAKOU entered into a Non-Disclosure Agreement ("NDA"), in which he agreed, in pertinent part, as follows:

> Intending to be legally bound, I hereby accept the obligation contained in this Agreement in consideration of my being

> granted access within Special Access Programs, hereinafter referred to in this Agreement as Sensitive Compartmented Information (SCI). I have been advised that SCI involves or derives from intelligence sources or methods and is classified . . . . I understand and accept that by being granted access to SCI, special confidence and trust shall be placed in me by the United States Government.
>
> I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand those procedures . . . .
>
> I have been advised that unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government Department or agency . . . that last authorized my access to SCI. I understand that it is my responsibility to consult with appropriate management authorities in [the agency] that last authorized my access to SCI, whether or not I am still employed by or associated with [the agency] . . . .
>
> In addition, I have been advised and am aware that any unauthorized disclosure of SCI by me may constitute a violation or violations of United States criminal laws, including the provisions of . . . Section[ ] 793 . . . [of] Title 18, United States Code . . . .

8. Defendant JOHN C. KIRIAKOU entered into at least seven additional NDAs in the course of his CIA employment. In each instance, KIRIAKOU promised never to disclose SCI to anyone not authorized to receive it without prior written authorization from the United States Government and acknowledged that

unauthorized disclosure of classified information could cause irreparable injury to the United States and be used to advantage by a foreign nation. The scope of these Non-Disclosure Agreements encompassed classified information referenced in this indictment.

9. In or about 2004, defendant JOHN C. KIRIAKOU resigned from the CIA, after which time KIRIAKOU retained his continuing, lifelong obligation to the United States to protect the classified information to which he had been granted access while employed as an intelligence officer with the CIA.

## Certain CIA Activities

10. Among the activities in which the CIA participated was an operation in Pakistan in or about March 2002 to capture Abu Zubaydah (the "Abu Zubaydah operation"), a terrorism subject then sought by the United States. The Abu Zubaydah operation fell within the scope of a CIA counterterrorism program known as the Rendition, Detention, and Interrogation Program (the "RDI Program").

## Covert Officer A

11. Covert Officer A was a covert CIA employee whose association with the CIA has been classified for more than two decades. Covert Officer A was a covert agent as defined at Title 50, United States Code, Section 426(4), and the United States Government was taking affirmative measures to conceal Covert Officer A's intelligence relationship to the United States. The association of Covert Officer A with the RDI Program was also classified and constituted national defense information.

**Officer B**

12. Officer B was employed by the CIA as an analyst assigned to the CIA Counterterrorism Center. Though the fact that the CIA employed Officer B was not itself classified, the associations of Officer B with the RDI Program and with the Abu Zubaydah operation were classified and constituted national defense information.

## COUNT ONE

*(50 U.S.C. § 421(a) - Disclosure of Information Identifying a Covert Agent)*

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 through 11 of the General Allegations are realleged here.

2. On or about July 11, 2008, defendant JOHN C. KIRIAKOU received an email from Journalist A, a person known to the Grand Jury and who was not authorized by the United States Government to receive classified information. Journalist A asked, "Can you remember the name(s) of any of the [specific CIA office] branch chiefs?" KIRIAKOU replied, "Sorry, [first name of Journalist A]. I never met any of those guys. And we never, ever dealt with them in [overseas city]."

3. On or about the same day, defendant JOHN C. KIRIAKOU responded separately to two emails that Journalist A sent in reply to KIRIAKOU's email of earlier that day:

a. In one email, Journalist A stated, "Presumably, [first name of Covert Officer A]." KIRIAKOU replied, "He had been my branch chief in [specific office,] [b]ut he's the only one I ever came into contact with."

b. In a second email, Journalist A asked, "Presumably [first name of Covert Officer A] worked in that group though, right?" KIRIAKOU replied, "I assume he did. And actually, I'm not sure he was the chief of it. He was the team leader on [specific CIA operation], though."

4. The foregoing association of Covert Officer A as "branch chief" in a specific CIA office and "team leader" on a specific CIA operation was classified because it

revealed Covert Officer A's identity and association with the CIA and with the RDI Program.

5. On or about August 18, 2008, defendant JOHN C. KIRIAKOU received an email from Journalist A asking KIRIAKOU to "pick out [first name of Covert Officer A]'s last name" from a list of names that Journalist A provided in the email, but which did not, in fact, include the name of Covert Officer A. Journalist A explained, "I'm not sure he's still in [country], but maybe he's on this list I've pulled."

6. On or about August 19, 2008, defendant JOHN C. KIRIAKOU emailed the first and last name of Covert Officer A to Journalist A and remarked, "It came to me last night."

7. On or about April 8, 2009, in response to an email from Journalist A, who asked, "Ever know a [name] in [specific CIA office]," defendant JOHN C. KIRIAKOU replied, "Sorry, [first name of Journalist A]. I didn't know the [specific office] people by name except for [first name of Covert Officer A]."

8. At times in 2008 and 2009, in the Eastern District of Virginia, and elsewhere,

JOHN C. KIRIAKOU,

defendant herein, having had authorized access to classified information that identifies a covert agent, intentionally disclosed information identifying such covert agent to an individual not authorized to receive classified information, knowing that the information disclosed so identified such covert agent and that the United States government was taking affirmative measures to conceal such covert agent's

intelligence relationship to the United States; in that defendant disclosed the name of Covert Officer A to Journalist A;

In violation of Title 50, United States Code, Section 421(a).

**COUNT TWO**

*(18 U.S.C. § 793(d) - Disclosure of National Defense Information to Journalist A)*

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 through 7 of Count One are realleged here.

2. Journalist A, a person known to the grand jury, was not a person entitled to receive information relating to the national defense.

3. At times in 2008 and 2009, in the Eastern District of Virginia, and elsewhere,

JOHN C. KIRIAKOU,

defendant herein, lawfully having had access to and been entrusted with information relating to the national defense, namely, the association of Covert Officer A with the CIA, the RDI Program, and a particular RDI operation, which information the possessor had reason to believe could be used to the injury of the United States and to the advantage of any foreign nation, willfully communicated and transmitted, caused to be communicated and transmitted, and attempted to communicate and transmit and cause to be communicated and transmitted, the same to Journalist A, a person not entitled to receive it;

In violation of Title 18, United States Code, Section 793(d).

## COUNT THREE

*(18 U.S.C. § 793(d) - Disclosure of National Defense Information to Journalist B)*

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 through 10 and Paragraph 12 of the General Allegations are realleged here.

2. Journalist B, a person known to the grand jury, was not a person entitled to receive information relating to the national defense.

3. On or about June 22, 2008, Journalist B publicly identified Officer B and purported to describe Officer B's role in the Abu Zubaydah operation in an article, "Inside the Interrogation of a 9/11 Mastermind," published in *The New York Times*.

4. In or about 2008, prior to the publication of the article, defendant JOHN C. KIRIAKOU, knowing that Journalist B was seeking to identify and locate Officer B in light of Officer B's role in the Abu Zubaydah operation, disclosed specific and personal contact and identifying information for Officer B to Journalist B. In so doing, KIRIAKOU confirmed that Officer B was involved in the Abu Zubaydah operation, information which was then classified.

5. On or about May 29, 2008, defendant JOHN C. KIRIAKOU sent an email to Journalist B in which KIRIAKOU stated that Officer B was in Pakistan in March 2002, thereby confirming Officer B's participation in the RDI Program and the Abu Zubaydah operation, information which was then classified.

6. At times in 2008 prior to June 22, 2008, in the Eastern District of Virginia, and elsewhere,

JOHN C. KIRIAKOU,

defendant herein, lawfully having had access to and been entrusted with information relating to the national defense, namely, the association of Officer B with the RDI Program and the Abu Zubaydah operation, which information the defendant had reason to believe could be used to the injury of the United States and to the advantage of any foreign nation, willfully communicated and transmitted, caused to be communicated and transmitted, and attempted to communicate and transmit and cause to be communicated and transmitted, the same to Journalist B, a person not entitled to receive it;

In violation of Title 18, United States Code, Section 793(d).

## COUNT FOUR

*(18 U.S.C. § 793(d) - Disclosure of National Defense Information to Journalist A)*

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 through 10 and Paragraph 12 of the General Allegations are realleged here.

2. Journalist A, a person known to the grand jury, was not entitled to receive information relating to the national defense.

3. On or about November 12, 2007, defendant JOHN C. KIRIAKOU emailed Officer B's personal email address to Journalist A.

4. On or about May 20, 2008, defendant JOHN C. KIRIAKOU revealed and confirmed to Journalist A that Officer B was associated with the RDI Program, information which was then classified. On May 17, 2008, Journalist A had emailed KIRIAKOU to ask, "In [Country X] and then in [another specific country], was [first name of Officer B] trained to do the techniques, or was he just asking the questions as the heavies were doing the various techniques," *i.e.*, enhanced interrogation techniques. On May 20, 2008, KIRIAKOU answered, "[First name of Officer B] was not trained in the enhanced techniques. He was simply there to ask the questions that the analysts had posed. . . . Your assertion on individual roles is correct."

5. On or about November 12, 2008, defendant JOHN C. KIRIAKOU again revealed and confirmed to Journalist A that Officer B was associated with the RDI Program. Journalist A had sought classified information regarding the manner and method of travel by participants in the RDI Program, including Officer B, and asked,

"[D]id [first name of Officer B] ever tell you how he actually got to [Country X] and [Country Y]?" In response, KIRIAKOU stated, among other things, "Re [first name of Officer B], he did not [travel in a certain way]," thereby confirming Officer B's participation in the RDI Program.

6. At times between and including November 2007 and November 2008, in the Eastern District of Virginia, and elsewhere,

JOHN C. KIRIAKOU,

defendant herein, lawfully having had access to and been entrusted with information relating to the national defense, namely, the association of Officer B with the RDI Program, which information the defendant had reason to believe could be used to the injury of the United States and to the advantage of any foreign nation, willfully communicated and transmitted, caused to be communicated and transmitted, and attempted to communicate and transmit and cause to be communicated and transmitted, the same to Journalist A, a person not entitled to receive it;

In violation of Title 18, United States Code, Section 793(d).

## COUNT FIVE

*(18 U.S.C. § 1001(a)(1) - Trick and Scheme to Conceal a Material Fact)*

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 to 10 of the General Allegations are realleged here.

2. At times material to this indictment:

a. Employees and former employees of the CIA were required to submit for clearance to the CIA's Publications Review Board ("PRB") any intelligence-related material that the employee or former employee prepared for publication or other use in the public domain, such as articles, books, or speeches. The purpose of the PRB review was to prevent the disclosure of classified information and thereby prevent damage to the national security of the United States.

b. If a person subject to the prepublication review process disagreed with a PRB determination that certain material could not be used, the person could lodge an objection or appeal the PRB decision through established procedures.

c. The PRB review process was limited to determining whether material was classified. As a general matter, material that an author fabricated, fictionalized, or simply made up was not considered classified.

3. As a former CIA employee subject to the prepublication review process, defendant JOHN C. KIRIAKOU was required to obtain PRB clearance for a book eventually published in or about 2010 as *The Reluctant Spy: My Secret Life in the CIA's War on Terror*, by John Kiriakou with a coauthor, and, to that end, the defendant began the process of seeking PRB clearance in the fall of 2007.

4. On or about August 15, 2007, defendant JOHN C. KIRIAKOU gave a recorded interview to his coauthor to assist the coauthor in drafting the manuscript for the book. KIRIAKOU described to his coauthor a classified investigative technique, which KIRIAKOU referred to as the "magic box," and told his coauthor that the CIA had used the technique in the Abu Zubaydah operation.

5. In or about October 2007, defendant JOHN C. KIRIAKOU submitted for PRB review a draft manuscript of the book that did not reference the "magic box." The PRB determined that the draft manuscript was classified, and the PRB advised KIRIAKOU of this fact.

6. In or about November 2007, defendant JOHN C. KIRIAKOU submitted for PRB review a draft manuscript of the book that did not reference the "magic box." The PRB determined that certain aspects of the draft were classified, and the PRB advised KIRIAKOU of this fact.

7. On or about June 22, 2008, Journalist B published an article in *The New York Times* that described the classified investigative technique and referred to it as a "magic box."

8. On or about June 30, 2008, defendant JOHN C. KIRIAKOU sent an email to his coauthor in which KIRIAKOU described the technique again and stated that KIRIAKOU thought "at the time [using the technique] was a great idea, conceptually."

9. On or about July 2, 2008, defendant JOHN C. KIRIAKOU sent an email to his coauthor about the PRB process and stated, "I'm guessing they'll let us publish a good chunk of the Abu Zubaydah story. They objected to some of the details of the

planning for the capture, but what I propose doing is telling them that we've fictionalized much of it (even if we haven't.)."

10. By letter dated July 28, 2008, defendant JOHN C. KIRIAKOU submitted for PRB review a draft manuscript of the book that described the use of the classified investigative technique in the Abu Zubaydah operation. In the letter, KIRIAKOU lied and falsely stated that the classified investigative technique he referred to as the "magic box" was fabricated. Specifically, KIRIAKOU stated:

> There is a reference early in this chapter to a device called a 'magic box.' I read about this so-called device in a New York Times article. The information in that article was clearly fabricated, as we used no such device. I am unaware of any device called a 'magic box', but I thought it intriguing, so I added it to this chapter. As it is fictionalized, I believe it is unclassified.

11. On or about August 17, 2008, defendant JOHN C. KIRIAKOU sent an email to his coauthor, attached the July 28 letter and manuscript, and stated:

> Here you go, [first name of coauthor]. I laid it on thick. And I said some things were fictionalized when in fact they weren't. There's no way they're going to go through years of cable traffic to see if it's fictionalized, so we might get some things through. Enjoy. John.

12. In or about 2008, in the Eastern District of Virginia, and elsewhere,

JOHN C. KIRIAKOU,

defendant herein, in a matter within the jurisdiction of the executive branch of the Government of the United States, namely, the Publications Review Board of the CIA, knowingly and willfully concealed and covered up by trick and scheme a material fact, namely, that a particular classified investigative technique was used in the Abu Zubaydah

operation;

In violation of Title 18, United States Code, Section 1001(a)(1).

A TRUE BILL:

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

FOREPERSON

PATRICK J. FITZGERALD
Special Attorney