IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
F I L E D
OCT 16 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA
```

UNITED STATES OF AMERICA )
)
)
v. )
)
)  1:12cr127  (LMB)
JOHN KIRIAKOU, )
)
           Defendant. )

## MEMORANDUM OPINION

The issue of scienter has arisen in the defendant's Motion
to Compel Production of Documents, specifically in categories
(1) and (3) of the defendant's requests for production, which
requests have been denied.  See Def.'s Mot. to Compel Produc. of
Docs. and Mem. in Supp. of Mot. [Dkt. No. 66 (original), Dkt.
No. 99 (redacted)] ("Def.'s Mot. to Compel") at 2-3; Order of
October 1, 2012 [Dkt. No. 80] (granting in part and denying in
part defendant's Motion to Compel Production of Documents).  The
information covered by these requests relates to the defense
theory that Kiriakou acted with a good faith motive and did not
intend to injure the United States or to give an advantage to a
foreign nation.  This Memorandum Opinion explains why the
scienter elements in 18 U.S.C. § 793(d) do not support the
defendant's argument that he may raise a good faith defense to
the charges brought under that statute.

## DISCUSSION[1]

In Counts II, III, and IV of the Indictment, Kiriakou is charged with violating the Espionage Act, specifically 18 U.S.C. § 793(d), by respectively disclosing national defense information ("NDI") to Journalist A about Covert Officer A, disclosing NDI to Journalist B that confirmed Officer B's involvement in the Abu Zubaydah operation and the Rendition, Detention, and Interrogation Program ("RDI Program"), and disclosing NDI to Journalist A that revealed and confirmed Officer B's involvement with the RDI Program. See Indictment [Dkt. No. 22], at 11-15.

The text of § 793(d) provides:

Whoever, lawfully having possession of, access to, control over, or being entrusted with any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted or attempts to communicate, deliver, transmit or cause to be communicated, delivered or transmitted the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it . . . [s]hall be fined under this title or imprisoned not more than ten years, or both.

[1] Further background information, including a summary of the allegations, can be found in the Memorandum Opinion issued on August 8, 2012. See Dkt. No. 62.

18 U.S.C. § 793(d).[2] Importantly, § 793(d) differentiates between "tangible" NDI, described in the "documents" clause ("any document, . . . or note relating to the national defense"), and "intangible" NDI, described in the "information" clause ("information relating to the national defense"). Although disclosure of either form of NDI is criminal only if the discloser acts "willfully," the statute imposes an additional scienter requirement when intangible NDI is at issue. See Mem. Op. [Dkt. No. 62], at 14 n.4 ("[T]he 'reason to believe could' cause injury language applies to intangible communication only, not to documents or other tangibles. This language heightens the scienter requirement with respect to conduct such as that alleged here."). The parties contest what that heightened scienter requirement entails, because the indictment specifically charges Kiriakou with violating the information clause, not the documents clause. See Indictment at 11, 13, 15.

Many of the cases cited by the parties do not directly address the proper interpretation of the heightened scienter requirement for disclosure of intangible NDI. For example, the

---

[2] Some of the cases discussed below interpret 18 U.S.C. § 793(e), which has exactly the same structure as § 793(d), except that it applies to those who have unauthorized, rather than lawful, possession of NDI, and it criminalizes failing to return that information to an officer or employee of the United States even when no demand for the return of the NDI has been made.

defense cites <u>Gorin v. United States</u>, 312 U.S. 19 (1941), which
imposed a bad faith requirement on sections of the predecessor
statute that textually required "intent or reason to believe
that the information to be obtained is to be used to the injury
of the United States, or to the advantage of any foreign
nation." <u>Id.</u> at 27-28 (quoting the Espionage Act of 1917
§ 1(a), 40 Stat. 217 (codified as amended at 18 U.S.C.
§ 793(a))).  Two frequently cited cases interpret the statutory
term "willfully," which applies to disclosures of both forms of
NDI, not the "reason to believe" clause, which applies only to
disclosures of intangible NDI.  See <u>United States v. Morison</u>,
844 F.2d 1057, 1071-73 (4th Cir. 1988) (interpreting
"wil[l]fully" for prosecution under the documents clause of
§ 793(d)); <u>United States v. Truong</u>, 629 F.2d 908, 919 (4th Cir.
1980) (upholding § 793(e) against an overbreadth challenge
because the district court "rel[ied] upon" the "willful[ness]"
requirement and gave jury instructions that "more than cured any
possible overbreadth" by requiring "bad faith," defined as a
"design to mislead or deceive another.  That is, not prompted by
an honest mistake as to one's duties, but prompted by some
personal or underhanded motive.").  Under these cases, "[a]n act
is done wil[l]fully if it is done voluntarily and intentionally
and with the specific intent to do something that the law

4

forbids," that is, "with a bad purpose either to disobey or to
disregard the law." Morison, 844 F.2d at 1071 (emphases
omitted).  Further, in prosecutions under both the documents and
the information clauses, the government must show that the
disclosed NDI "relate[s] to the national defense," meaning that
it is "closely held" and that its disclosure "would be
potentially damaging to the United States or might be useful to
an enemy of the United States." Id. at 1071-72.

The only case cited by the parties that directly addresses
the appropriate interpretation of the heightened scienter
requirement for intangible NDI is United States v. Rosen, 445 F.
Supp. 2d 602, 643 (E.D. Va. 2006).[3]  In Rosen, two employees of
the American Israel Public Affairs Committee were indicted under
18 U.S.C. § 793(g) for conspiracy to "transmit information
relating to the national defense to those not entitled to
receive it"; that is, conspiracy to violate § 793(e). Id. at

---

[3] The defense also cites United States v. Drake, 818 F. Supp. 2d
909, 916-18 (D. Md. 2011), for the proposition that a heightened
scienter requirement must be applied when the disclosure is of
intangible information. See Def.'s Reply at 3 n.1.  Drake
quotes extensively from Rosen, but mostly to distinguish it.
Because Drake was charged with unlawfully retaining documents
under 18 U.S.C. § 793(e), the "reason to believe" scienter
requirement was inapplicable. See id. at 918 ("Thus, in a case
such as this one that involves solely the willful retention of
classified documents, not intangible information, there is no
heightened mens rea requirement." (emphases in original)).
Accordingly, Drake has no bearing on the interpretation of the
"reason to believe" clause.

607.  The indictment alleged that a Department of Defense
employee orally communicated classified information to the
defendants, and in one instance faxed one defendant a document
that the government employee had created based on a classified
document.  Id. at 609.  The indictment went on to allege that
the defendants then communicated this classified information to
foreign officials and journalists.  Id. at 609-10.  Focusing on
the phrases "information relating to the national defense" and
"entitled to receive," the defendants argued that 18 U.S.C.
§ 793(e) was unconstitutionally vague as applied to them,
emphasizing that they received the information orally, making it
difficult for them to know whether the information was
classified, and therefore depriving them of constitutionally
adequate notice.  See id. at 623-24.  They also argued that they
did not have a "constitutionally sufficient basis for
determining who is 'entitled to receive' the information"
because "they were not government employees familiar with the
executive branch's classification regulations" and those
classification regulations were not incorporated into the
statute.  Id. at 624.

In rejecting the defendants' arguments, the Rosen court
found that "the statute's 'willfulness' requirement obligates
the government to prove that the defendants knew that disclosing

6

the NDI could threaten the nation's security, and that disclosure was illegal, but it leaves open the possibility that defendants could be convicted for these acts despite some salutary motive." Id. at 626. The Rosen court went on to find that the "reason to believe" language, on the other hand, required the government to "demonstrate the likelihood of defendant's bad faith purpose to either harm the United States or to aid a foreign government." Id. The two scienter requirements were therefore "not duplicative" because the first "concerns only the quality of the information," whereas the second "relates to the intended (or recklessly disregarded) effect of the disclosure." Id.; see also id. at 641 n.56 ("As noted, the additional scienter requirement contained in the 'reason to believe' clause that applies to the transmission of intangible information, is not superfluous because it relates not to the nature of the information, but to the subjective understanding of the defendant as to the possible effect of the disclosure." (emphasis in original)). In a later opinion, the Rosen court reiterated this interpretation. See United States v. Rosen, 520 F. Supp. 2d 786, 793 (E.D. Va. 2007) ("These are glosses on the statutory willfulness requirement that also require the government to prove, in cases involving oral disclosures rather than document disclosures, that the defendant

7

had a bad faith purpose to harm the United States or to aid a foreign government.").[4]

The government argues that the reasoning in Rosen is inapplicable to its case against Kiriakou because "Kiriakou had a recognized obligation not to divulge classified, national defense information to those not entitled to receive it." Gov.'s Resp. at 10.  The government's argument is well taken. Specifically, Kiriakou was a government employee trained in the classification system who could appreciate the significance of the information he allegedly disclosed.  Accordingly, there can be no question that Kiriakou was on clear notice of the illegality of his alleged communications.  The facts thus clearly differentiate his case from Rosen.  Cf. Morison, 844 F.2d at 1073-74 (highlighting "the defendant's own expertise in the field of governmental secrecy and intelligence operations" in holding that the phrase "relating to the national defense" was not unconstitutionally vague as applied to the defendant).

Additional reasons militate against following the reasoning in Rosen.  In an interlocutory appeal taken in the Rosen case,

---

[4] Dicta in a Supreme Court concurrence lends some very attenuated support for this position.  See New York Times Co. v. United States, 403 U.S. 713, 738 n.9 (1971) (White, J., concurring) ("[I]n prosecuting for communicating or withholding a 'document' [under § 793(e)] as contrasted with similar action with respect to 'information' the Government need not prove an intent to injure the United States or to benefit a foreign nation but only willful and knowing conduct.").

the Fourth Circuit observed that although it did not have
jurisdiction to review the district court's interpretation of
the "reason to believe" clause, it was "concerned by the
potential that the § 793 Order imposes an additional burden on
the prosecution not mandated by the governing statute." United
States v. Rosen, 557 F.3d 192, 199 n.8 (4th Cir. 2009).
Moreover, the Fourth Circuit in Morison quoted the House
Committee Report on § 793(d) for the 1950 revision of the
Espionage Act:

> Subsection 1(d) [793(d)] provides that those having
> lawful possession of the items described therein
> relating to the national defense who willfully
> communicate . . . them to an unauthorized person, . . .
> shall be guilty of a crime. No showing of intent is
> necessary as an element of the offense, provided the
> possessor has reason to believe that the material
> communicated could be used to the detriment of the
> United States or to the advantage of a foreign nation.
> The absence of a requirement for intent is justified, it
> is believed, in contrast to the express requirement of
> intent in subsections 1(a), 1(b) and 1(c), in view of
> the fact that subsection 1(d) deals with persons
> presumably in closer relationship to the Government
> which they seek to betray.

844 F.2d 1057, 1073 n.26 (quoting H.R. Rep. No. 647, 81st Cong.,
1st Sess. (1949), at 3-4) (first alteration in original). This
legislative history counsels strongly in favor of interpreting
the statutory text as it is written, in the absence of a
constitutional reason to do otherwise.

9

Finally, in the few jurisdictions where the disclosure of intangible NDI in violation of § 793(d) has been prosecuted, the government has not been required to prove that the defendant intended to harm the United States or to aid a foreign government.  In considering a challenge to the sufficiency of the evidence supporting the defendant's conviction under § 793(d), the Second Circuit did not require the evidence to support a rational conclusion that the defendant intended to injure the United States:

> To convict [the defendant] of the § 793(d) crime with which he was charged, the government was required to prove beyond a reasonable doubt that he (1) lawfully had possession of, access to, control over, or was entrusted with information relating to the national defense; (2) had reason to believe that such information could be used to the injury of the United States or to the advantage of any foreign nation; (3) willfully communicated, delivered, transmitted, or caused to be communicated, delivered, or transmitted such information; and (4) did so to a person not entitled to receive it.

United States v. Abu-Jihaad, 630 F.3d 102, 135 (2d Cir. 2010); see also United States v. Kim, 808 F. Supp. 2d 44, 55 (D.D.C. 2011) (similarly defining the elements that the government must prove to establish that the defendant violated § 793(d)).  The Second Circuit reiterated this interpretation in its analysis of the evidence supporting the "reason to believe" element, observing that based on the "classified nature of the information" and the defendant's "demonstrated

10

understanding . . . of the impact of an attack on a United States warship, a rational juror could certainly conclude that the defendant had reason to believe" that the disclosed information "could be used to injure the United States." Id. at 136.[5]

Additionally, military courts do not impose an intent to injure or a bad faith requirement in prosecutions under § 793(d) and (e), although they do not appear to always draw a sharp distinction between the "documents" clause and the "information" clause. See United States v. Diaz, 69 M.J. 127, 132-33 (C.A.A.F. 2010) (rejecting defendant's argument that § 793(e) requires proof of "an 'intent to do harm' or 'bad faith'" and affirming the military judge's decision to exclude evidence of the defendant's salutary motives); United States v. McGuinness, 35 M.J. 149, 153 (C.M.A. 1992) (holding that § 793(e) does not require the government to prove that the defendant had "a sinister purpose to injure the interests of the United States"); see also United States v. Attardi, 43 C.M.R. 388, 393-94 (C.M.A. 1971) ("Our reading of Gorin convinces us that the holding of

---

[5] The district court's jury instructions in that case, which were not subjects of the defendant's post-conviction motions or of his appeal, similarly mirrored the statute and did not require the government to prove beyond a reasonable doubt that the defendant intended to injure the United States or give an advantage to a foreign nation. See United States v. Abu-Jihaad, 600 F. Supp. 2d 362, 384 (D. Conn. 2009) (quoting jury instructions).

that case has no application to a prosecution under section 793(d) of Title 18, United States Code, and is no authority that a prosecution under that section must show scienter or bad faith instead of only willfulness.").

In summary, there is no direct, binding authority dealing with the "reason to believe" clause that imposes a burden on the government to prove that the defendant intended to injure the United States or to aid a foreign government, or that allows a defendant to pose a good faith defense. In fact, what pertinent authority exists points in the opposite direction and favors adhering closely to the text of the statute. Accordingly, the Court finds that the text of the statute means what it says, and therefore the heightened scienter requirement for disclosure of intangible NDI only requires the government to establish that "the possessor ha[d] reason to believe [that the information] could be used to the injury of the United States or to the advantage of any foreign nation." 18 U.S.C. § 793(d).

For these reasons, defendant's requests for discovery that would support a good faith defense have been denied because any claim that he acted with a salutary motive, or that he acted without a subversive motive, when he allegedly communicated NDI to journalists is not relevant to this case. Cf. United States v. Morison, 622 F. Supp. 1009, 1011 (D. Md. 1985) (finding that

"evidence of the defendant's patriotism is irrelevant to the issues raised in 18 U.S.C. § 793(d) and (e)").

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record and to the Classified Information Security Officer.

Entered this __16th__ day of October, 2012.

Alexandria, Virginia

                                        /s/
                                    _____
                                    Leonie M. Brinkema
                                    United States District Judge