1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA      .      Criminal No. 1:12cr127
                              .
      vs.                     .      Alexandria, Virginia
                              .      October 23, 2012
JOHN KIRIAKOU,                .      11:00 a.m.
                              .
            Defendant.        .
                              .
.  .  .  .  .  .  .  .  .  .  .

TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:              W. NEIL HAMMERSTROM, JR., AUSA
                                 IRIS LAN, AUSA
                                 MARK SCHNEIDER, AUSA
                                 United States Attorney's Office
                                 2100 Jamieson Avenue
                                 Alexandria, VA 22314
                                   and
                                 RYAN P. FAYHEE
                                 Trial Attorney
                                 U.S. Department of Justice
                                 National Security Division
                                 Counterespionage Section
                                 600 E Street, N.W.
                                 Washington, D.C. 20004

FOR THE DEFENDANT:               ROBERT P. TROUT, ESQ.
                                 JESSE I. WINOGRAD, ESQ.
                                 Trout Cacheris, PLLC
                                 1350 Connecticut Avenue, N.W.
                                 Suite 300
                                 Washington, D.C. 20036

OFFICIAL COURT REPORTER:         ANNELIESE J. THOMSON, RDR, CRR
                                 U.S. District Court, Fifth Floor
                                 401 Courthouse Square
                                 Alexandria, VA 22314
                                 (703)299-8595

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

```
 1              P R O C E E D I N G S

 2                  (Defendant present.)

 3         THE CLERK:  Criminal Case 12-127, United States of

 4   America v. John Kiriakou.  Would counsel please note their

 5   appearances for the record.

 6         MR. HAMMERSTROM:  Good morning, Your Honor.  Neil

 7   Hammerstrom, Mark Schneider, Iris Lan, and Ryan Fayhee for the

 8   United States.

 9         THE COURT:  Good morning.

10         MR. TROUT:  Good morning, Your Honor.  Robert Trout

11   and Jesse Winograd from the firm of Trout Cacheris, on behalf

12   of Mr. Kiriakou.

13         THE COURT:  Good morning.

14         MR. TROUT:  Good morning.

15         THE COURT:  All right, we have the original plea

16   agreement and statement of facts.

17         MR. HAMMERSTROM:  Your Honor, I need to point out one

18   difference between what was delivered to chambers.

19         THE COURT:  Yes, sir.

20         MR. HAMMERSTROM:  The fine amount should be $250,000.

21   An amendment to that provision of Title 50 imposed the Title 18

22   fine schedule, so I've made that change on the original

23   documents that have been provided to the Court today.

24         THE COURT:  And is there -- there is not a -- I'm

25   sorry, yes, there is a special assessment.  All right, that's
```

1  fine.

2           Now, counsel, just so you know before we start the

3  process, you-all submitted this plea under Rule 11(c)(1)(C),

4  which is what we call a binding plea.  In other words, the

5  parties have agreed in this agreement to a specific sentence,

6  and the Court must accept that or the plea is not accepted.

7  The government did provide the Court with a draft of the plea

8  agreement ahead of time, and I reviewed it quite carefully.

9           It is not the general practice in this courthouse for

10 judges to take binding Rule 11 pleas.  I've done it at least

11 once in the past in another national security case, and I have

12 carefully considered the pros and cons of that type of plea.  I

13 also looked very carefully at the proposed sentence, which I

14 understand is the same sentence that was imposed on Scooter

15 Libby in a similar kind of situation.

16          I think it is reasonable under the circumstances

17 balancing the various interests, so assuming everything goes

18 forward this morning without any hitches, I will accept this

19 plea with the recommendation that's in it, all right?

20          Are there any preliminary matters before we begin the

21 process?

22          MR. HAMMERSTROM:  Not for the government, Your Honor.

23          THE COURT:  Mr. Trout, anything before we start?

24          MR. TROUT:  No, Your Honor.

25          THE COURT:  All right, Mr. Kiriakou, come up to the

1   lectern.  The clerk is going to place you under an affirmation.

2              JOHN CHRIS KIRIAKOU, DEFENDANT, AFFIRMED

3              THE COURT:  All right, Mr. Kiriakou, you have just

4   taken a promise to tell the truth in answering all of the

5   Court's questions.  That means that if you should lie in

6   answering any question, you could be prosecuted for a new and

7   separate crime called perjury.  Do you understand that?

8              THE DEFENDANT:  I do.

9              THE COURT:  For the record, what is your full name?

10             THE DEFENDANT:  John Chris Kiriakou.

11             THE COURT:  And, Mr. Kiriakou, how old are you?

12             THE DEFENDANT:  I'm 48 years old.

13             THE COURT:  How much education have you completed?

14             THE DEFENDANT:  I have finished my master's degree.

15             THE COURT:  I assume then that you do not have any

16  problem reading, writing, understanding, or speaking English?

17             THE DEFENDANT:  I do not.

18             THE COURT:  And you are a United States citizen,

19  correct?

20             THE DEFENDANT:  I am.

21             THE COURT:  Are you presently on probation, parole,

22  or supervised release from any other criminal case?

23             THE DEFENDANT:  No.

24             THE COURT:  Are you at this time under the care of a

25  doctor for any physical or mental condition?

1          THE DEFENDANT:  A physical condition.

2          THE COURT:  And the condition is what?

3          THE DEFENDANT:  Diabetes.

4          THE COURT:  All right.  Are you taking medication for

5  that condition?

6          THE DEFENDANT:  I am.

7          THE COURT:  Have you taken your medication on

8  schedule?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Other than the diabetes medication,

11  within the last 24 hours, have you taken any medication,

12  whether by prescription or over the counter?

13          THE DEFENDANT:  No.

14          THE COURT:  Are you at this time under the influence

15  of any alcohol or drugs?

16          THE DEFENDANT:  No.

17          THE COURT:  All right.  We have in court this morning

18  a written plea agreement which is seven pages long, and I see

19  what appears to be your signature at the top of page 7 with

20  today's date.  Did you, in fact, sign the written plea

21  agreement?

22          THE DEFENDANT:  I did.

23          THE COURT:  And you signed it this morning before

24  court?

25          THE DEFENDANT:  Yes.

1            THE COURT:  All right.  Now, before you signed the

2     plea agreement, did you read it over for yourself word for

3     word?

4            THE DEFENDANT:  Yes.

5            THE COURT:  And approximately when did you first see

6     a copy of the plea agreement which is in court today?

7     Approximately.

8            THE DEFENDANT:  Approximately three days ago.

9            THE COURT:  All right.  And other than the fine, has

10    any change been made to the copy that you first read three days

11    ago?

12           THE DEFENDANT:  No.

13           THE COURT:  All right.  And when you read the plea

14    agreement, was counsel present?

15           THE DEFENDANT:  Yes.

16           THE COURT:  So you read it at the law firm?

17           THE DEFENDANT:  Initially at the law firm and then

18    we've, we've spoken about it several times over the telephone.

19           THE COURT:  All right.  Now, have you had enough time

20    to ask your counsel all the questions that you have about the

21    plea agreement?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Have they answered all of your questions

24    to your satisfaction?

25           THE DEFENDANT:  Yes.

1          THE COURT:  Do you have any questions you want to ask

2   me about the plea agreement?

3          THE DEFENDANT:  I do not.

4          THE COURT:  I want you to look at page 7.  The next

5   question is somewhat repetitive, but I want to make sure you're

6   crystal clear.  If you look at the two sentences immediately

7   above where your signature would be, they go, "I have read this

8   plea agreement and carefully reviewed every part of it with my

9   attorney.  I understand this agreement and voluntarily agree to

10  it."

11         Do you see those two sentences?

12         THE DEFENDANT:  Yes, I do.

13         THE COURT:  Are they completely true in every

14  respect?

15         THE DEFENDANT:  Yes, they are.

16         THE COURT:  Now, Mr. Kiriakou, by telling the Court

17  that you've read the entire plea agreement and discussed it

18  thoroughly with counsel and that you understand it and you're

19  voluntarily agreeing to it, that means you will be bound by

20  everything that's written in this seven-page document even if I

21  don't go over every paragraph or page with you in court today.

22         Do you understand that?

23         THE DEFENDANT:  I do.

24         THE COURT:  And the reason for that result is that

25  this plea agreement is really a written contract between you

1   and the United States government, and when a person signs a

2   written contract after he's carefully reviewed it with counsel

3   and he understands it when he signs it and he signs it

4   voluntarily, then you can't just come back to court in a couple

5   of weeks and say, "You know, I really don't like what's on page

6   4.  I want to change it."

7           That's just too late.  Do you understand that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Now, other than the plea agreement that's

10  in court this morning, do you have any side deals or side

11  understandings of any kind with anyone from your former

12  employer, the U.S. Attorney's Office, the Department of

13  Justice, or anybody else concerning this case?

14          THE DEFENDANT:  No.

15          THE COURT:  Mr. Trout, is that correct?

16          MR. TROUT:  That's correct, Your Honor.

17          THE COURT:  All right.  Let's turn then to page 1,

18  paragraph 1, and there it indicates you've agreed to plead

19  guilty to Count 1 of the pending indictment that charges you

20  with intentionally disclosing information identifying a covert

21  agent, in violation of Title 50, United States Code, section

22  421(a).  That is a felony offense exposing you to the possible

23  sentence of up to ten years of imprisonment followed by three

24  years of supervised release, a fine of up to $250,000, and

25  there'll be an automatic special assessment of $100.

1          Do you understand the penalties that by law you're

2   facing?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  Now, parole is not available

5   in the federal system.  That means whatever term of

6   imprisonment is imposed must be fully served.  Do you

7   understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And after the prison portion of the

10  sentence has been satisfied, that's when the supervised release

11  portion of the sentence goes into effect.  Now, when a person

12  is on supervised release, he is under the control of a federal

13  probation officer.  It's much like the bond that you're on

14  right now, where you're under the control of a court official,

15  and there will be conditions of things that you must do and

16  things that you cannot do while you're on supervision.

17         Do you understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  I can't tell you the specific conditions

20  yet because I haven't seen the pre-sentence report.  However,

21  what you need to understand at this point is that if you

22  violate any condition of supervised release, you could be sent

23  back to prison for as long as the period of supervised release,

24  which is three years.

25         Do you understand that?

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  Now, because this is a binding Rule

 3   11(c)(1)(C) plea, I want to turn your attention to paragraph 2.

 4   Normally in a plea colloquy, I would explain to a defendant how

 5   the sentencing guidelines work and how Section 3553(a) of Title

 6   18 work, but in this case, I don't believe that's necessary.

 7              What you need to understand and appreciate is

 8   paragraph 2.  It indicates there that you and the government

 9   have agreed that the sentence to be imposed will be a period of

10   imprisonment of 30 months on Count 1 followed by a term of

11   three years of supervised release, and there will be an

12   automatic special assessment of $100.

13              Is that your understanding of the agreement you have

14   reached with the government?

15              THE DEFENDANT:  Yes.

16              THE COURT:  And as I already indicated to you,

17   assuming everything goes well with the rest of these questions

18   and answers, this Court will accept the plea agreement as

19   you-all have proposed in paragraph 2.

20              Now, in paragraph 3 of the plea agreement, there's an

21   indication that the United States does not oppose your request

22   that will be made at the sentencing hearing that the Court

23   recommend that the Bureau of Prisons designate you for the

24   service of your sentence to a minimum security camp at Federal

25   Correctional Institution Loretto, Pennsylvania.
```

1          I want to make sure you understand that no matter

2   what the Court recommends, the Bureau of Prisons makes the

3   ultimate decision, No. 1, as to the level of security, whether

4   it would be a camp or a level 1, 2, 3, whatever, and they also

5   make the decision as to the specific facility, and if they do

6   not follow the recommendation, that is not a violation of the

7   plea agreement, and it will not give you a basis to withdraw

8   your guilty plea.

9          Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  In paragraph 6 of the plea agreement,

12   that addresses the forfeiture of certain pension rights.

13   You've agreed in paragraph 6(a) that you may not be paid

14   annuity or retirement payments arising from your federal

15   service as a result of this conviction for Count 1, and so you

16   have agreed to forfeit any interest that you might have in such

17   future payments.

18          Is that part of your understanding of this agreement?

19          THE DEFENDANT:  It is, but I'm still unclear, Your

20   Honor, as to the money that I contributed to the pension, what

21   happens to that money.

22          THE COURT:  We're not a pension expert.  Does the

23   government have any idea, Mr. Hammerstrom?

24          MR. HAMMERSTROM:  I don't know, Your Honor, but I

25   think that next paragraph makes that sort of moot because --

1          THE COURT:  Because of the spouse?

2          MR. HAMMERSTROM:  That is an option here if they take

3   advantage of that.

4          THE COURT:  All right.  Well, let's get to paragraph

5   6(b).  There it indicates that you also acknowledge -- again,

6   this is governed by Title 5 of the United States Code, section

7   8318(e) -- that your spouse shall be eligible for spousal

8   pension benefits only if the attorney general of the United

9   States determines that your spouse fully cooperates with

10  federal authorities in the ongoing criminal investigation and

11  prosecution of yourself.

12          The decision to invoke the provisions of Title 5 is

13  vested solely in the attorney general, and any determination by

14  the attorney general that the defendant's spouse has not fully

15  cooperated shall not be a basis for the defendant to withdraw

16  his guilty plea.

17          Do you understand that's part of this plea agreement?

18          THE DEFENDANT:  Yes.

19          THE COURT:  So that probably answers the question.

20  Obviously, there wouldn't be any pension benefit if you hadn't

21  made contributions.

22          I assume that's what you meant, Mr. Hammerstrom?

23          MR. HAMMERSTROM:  Yes, Your Honor.

24          THE COURT:  All right.  So that's something you're

25  going to need to work out with your counsel and maybe a pension

1    expert, all right?

2          THE DEFENDANT:  (Nodding head.)

3          THE COURT:  Defendants normally have a right to

4    appeal their conviction as well as any sentence that's imposed

5    on them, but if you look at paragraph 7, as part of this plea

6    agreement, you are waiving -- which means giving up -- your

7    right to appeal the conviction for Count 1 and any sentence

8    that's within the statutory maximum.

9          Do you understand that's part of your plea agreement?

10         THE DEFENDANT:  Yes.

11         THE COURT:  My understanding is from paragraph 9 that

12   there's not going to be any other monetary penalties.  Is that

13   correct, Mr. Hammerstrom?

14         MR. HAMMERSTROM:  Correct, Your Honor.

15         THE COURT:  All right.  In paragraph 10, the

16   government has agreed that it will not further criminally

17   prosecute you in this district for any of the specific conduct

18   described in the indictment or the statement of facts.  Now,

19   paragraph 10 does not give you universal immunity, so if you

20   were involved in some other illegal activity in the District of

21   Columbia or Maryland, for example, those authorities could

22   still prosecute you.

23         Do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  In addition, if you were involved in

1    criminal activity other than what's described in the indictment

2    in this district, the U.S. Attorney's Office for this district

3    could still prosecute you here.  Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  In paragraph 11, the government has

6    agreed that it will upon your guilty plea being accepted move

7    to dismiss the remaining counts of the indictment.  Is that

8    also part of your understanding?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Now, have you had enough time to explain

11   everything you know about this case to your counsel?

12             THE DEFENDANT:  I have.

13             THE COURT:  And have they discussed with you the

14   nature of the charge in Count 1 and any ways in which you could

15   possibly defend yourself against that charge?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Are you fully satisfied with the way your

18   counsel have worked for you in this case?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And, Mr. Trout, just for the record,

21   because I think the Supreme Court now really requires us to

22   look a little bit more into the plea bargaining history in the

23   case, other than the few changes that were made to the plea

24   agreement that's in court today, were there any other

25   significant offers before this one?  In other words, were there

 1    any other proposed plea agreements coming from the government

 2    to you-all other than this one?

 3              MR. TROUT:  Your Honor, there was an offer that was

 4    made pre-indictment which was rejected.

 5              THE COURT:  Was it significantly different from this

 6    one?

 7              MR. TROUT:  In my judgment, it was not as favorable.

 8              THE COURT:  This is more favorable?

 9              MR. TROUT:  In my judgment.

10              THE COURT:  All right.

11              MR. TROUT:  And then we did have negotiations or

12    conversations and some back-and-forth, I would say, beginning a

13    couple of weeks ago.

14              THE COURT:  All right.  And have you shared with

15    Mr. Kiriakou all of the proposals that you've received from the

16    government?

17              MR. TROUT:  Yes, Your Honor.

18              THE COURT:  And given him an assessment as to whether

19    he should consider accepting that proposal or try to negotiate

20    something else?

21              MR. TROUT:  Both in meetings and in written

22    communications, Your Honor.

23              THE COURT:  All right.  Now, Mr. Kiriakou, do you

24    understand you still at this time have a right to continue with

25    your not guilty plea to Count 1 of the indictment?

1           THE DEFENDANT:  Yes.

2           THE COURT:  And if you decided to go to trial on

3    Count 1, then obviously, the burden would be on the government

4    to prove you guilty, and specifically, in order for them to

5    prove that you are guilty of the charge in Count 1, they'd have

6    to be able to prove that on or about July 11, 2008, that you

7    essentially revealed the name of the person who was considered

8    to be a covert agent.

9           The government would have to be able to prove that

10   the person, in fact, was covert, in other words, that the

11   government had steadfastly tried to keep that person's identity

12   secret.  That's a major issue in this case.  Do you understand

13   that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  They would have to show beyond a

16   reasonable doubt that you knowingly made the disclosure.  Do

17   you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And they'd have to make sure -- they'd

20   have to be able to prove beyond a reasonable doubt that the

21   disclosure occurred or had some connection to the Eastern

22   District of Virginia.  Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Now, if a person pleads not guilty and

25   goes to trial, then there are a series of rights and

1   protections that he has at trial that he doesn't really have

2   when he pleads guilty.  First, at trial you could see all of

3   the government's witnesses and evidence and test it through the

4   questions of your attorney.  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You could ask the Court to issue

7   subpoenas to require the presence of witnesses and/or evidence

8   at the courthouse that you could use in your defense.  Do you

9   understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  You could testify as a witness at trial.

12   Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  However, you could also invoke your Fifth

15   Amendment right to remain silent, and if you chose not to

16   testify, no inference of guilt could be drawn from your

17   silence.  Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  You would, of course, have the right to

20   be represented by counsel throughout your trial, and if you

21   could not afford counsel, we would make sure you had counsel at

22   taxpayers' expense.  Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Now, you opted for a trial by jury.  A

25   jury trial would be conducted with 12 ordinary citizens brought

1   basically together on a random basis, and in order for a jury

2   to reach a decision as to any issue in the case, the jury would

3   have to be unanimous.  So if, for example, just one juror had a

4   reasonable doubt about your guilt, that jury could not convict

5   you.  It would be what we call a hung jury, and you'd have a

6   right to a new trial with a new jury on that issue.

7           Do you understand that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  If you continued with a not guilty plea,

10  your counsel could continue their efforts to attack the

11  prosecution's case.  As you know, there were still a lot of

12  CIPA issues that have not yet been resolved, and there may be

13  other types of issues that could be raised pretrial or at

14  trial.

15          What you need to appreciate is that by pleading

16  guilty, you're giving up your right first of all to appeal any

17  of the Court's previous decisions involving CIPA or anything

18  else, and you're also giving up any of the defenses that you

19  might have.  Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And lastly, if you pled not guilty to

22  Count 1 and you were found guilty on that count, you could

23  appeal that finding of guilt to a higher-level court.  Do you

24  understand, as I indicated earlier, under the terms of this

25  plea agreement as well as the way the law is structured, when a

1  person is found guilty based upon his own guilty plea, he gives

2  up his right to appeal his conviction?  Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Other than the written plea agreement

5  that's in court this morning, has anybody promised or suggested

6  to you that by pleading guilty, you would get a lighter

7  sentence or more favorable treatment by the Court?

8          THE DEFENDANT:  No.

9          THE COURT:  Has anyone put any force or pressure on

10 you to plead guilty today?

11         THE DEFENDANT:  No.

12         THE COURT:  All right.  Mr. Kiriakou, the last

13 document we have, which is part of your plea agreement, is the

14 written statement of facts, and that statement of facts, which

15 is quite extensive, is 11 pages long.  I see on page 11 what

16 appears to be your signature, and again, there is no date, but

17 I'm assuming you signed it this morning.  Is that correct?

18         THE DEFENDANT:  No, Your Honor.  I signed it

19 yesterday.

20         THE COURT:  Yesterday?  The 22nd?

21         MR. TROUT:  Yes.  He re-signed it this morning.

22         THE DEFENDANT:  I did actually re-sign it this

23 morning.

24         THE COURT:  All the attorneys signed it today.

25         THE DEFENDANT:  I was looking at the photocopy.

1              THE COURT:  All right.  Mr. Kiriakou, before you

2    signed the statement of facts, did you read it over carefully

3    for yourself?

4              THE DEFENDANT:  Yes.

5              THE COURT:  I assume because this normally happens

6    that you and your counsel negotiated to some degree the

7    statement of facts?

8              THE DEFENDANT:  Yes, that's correct.

9              THE COURT:  And the one that's in court today

10   reflects the final result of those negotiations?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you understand that by signing the

13   statement of facts, you're doing two things:  One, you're

14   admitting the truth of everything that is written in the 26

15   numbered paragraphs before your signature.  Do you understand

16   that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And secondly, you are also admitting that

19   if the case had gone to trial, the government could have proven

20   all of those facts beyond a reasonable doubt.

21             THE DEFENDANT:  Yes.

22             THE COURT:  Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  All right.  I'm not going to go over the

25   long statement of facts with you verbatim, but I will just

1  touch on a few of these paragraphs just to make sure there's no

2  slippage.  Do you agree that in the 2008-2009 time period, in

3  this district and elsewhere, that you intentionally -- and that

4  means not by an accident or mistake -- disclosed information

5  identifying a covert agent to an individual not authorized to

6  receive classified information, and that at that time, you knew

7  that the information disclosed identified the covert agent and

8  that the United States government was taking affirmative

9  measures to conceal that covert agent's intelligence

10  relationship to the United States?

11          Do you agree that that happened?

12          THE DEFENDANT:  Yes.

13          THE COURT:  All right.  And you certainly can consult

14  with counsel.  Remember, my earlier question to you was if you

15  have any -- if you have any dispute with any factual allegation

16  in this statement of facts, this is the time to set the record

17  straight, and so if you want to clarify the record, you need to

18  do it now.

19          THE DEFENDANT:  Thank you, Your Honor.

20          THE COURT:  Do you want to clarify the record?

21          THE DEFENDANT:  No, I do not.

22          THE COURT:  You're sure?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Because you're going to live with this

25  statement of facts forever.

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  I'm not going to go through

3    the statement here in court any further because you've clearly

4    indicated that you've read it carefully and you're not

5    disputing any of it.  I'll give you one last chance:  If

6    there's anything that you want to nuance, anything else you

7    think the Court should know, this is the time.

8          THE DEFENDANT:  I do have one question, Your Honor.

9          THE COURT:  Go ahead.

10          THE DEFENDANT:  It is still unclear to me why

11    paragraphs 17 and onward are even in this statement of facts.

12    If the prosecution is dropping all of these charges, it seems

13    to me that these paragraphs are irrelevant and even

14    inflammatory.  If I'm only being charged -- or if I'm only

15    pleading guilty to Count 1, I just don't understand why Counts

16    2 through 5 are even in this statement of facts when they're

17    not in the plea agreement.

18          THE COURT:  I'm assuming your counsel and the

19    government counsel fought long and hard over this statement of

20    facts.

21          Is that a fair assumption, Mr. Trout?

22          MR. TROUT:  Very fair, Your Honor.

23          THE COURT:  All right.  In some respects, it's window

24    dressing, I agree with you, because this is a binding plea.  If

25    this were not a binding plea, this would be relevant conduct

1    which the Court would or would not -- this Court's not crazy

2    about relevant conduct, frankly, but it would factor into the

3    guideline calculations, and I think for the record, we will

4    need to have the guidelines calculated in this case, but the

5    bottom line is it isn't going to make any difference to the

6    outcome of this case.

7              THE DEFENDANT:  Certainly.

8              THE COURT:  All right?  Now, again, this is your day

9    in court, and I don't want you to feel in any respect pressured

10   into this plea.  If you feel strongly enough about this

11   statement of facts that you don't want to acknowledge these

12   paragraphs, you can, you know, withdraw, but, I mean, this is

13   the plea that you've been offered by the government, and you

14   need to decide now -- if you want to talk to Mr. Trout for a

15   few more minutes, you certainly may -- whether you want to

16   accept this statement of facts as it is or not.

17             THE DEFENDANT:  Your Honor, I'll accept it.  I just,

18   I just wanted to point that out.  Thank you for the

19   opportunity.

20             THE COURT:  All right.  And it's not lost on the

21   Court.

22             THE DEFENDANT:  Thank you.

23             THE COURT:  All right.  Now, do you understand,

24   Mr. Kiriakou, that if the Court accepts your guilty plea this

25   morning, there's going to be no further trial of this case, and

1    you will be found guilty as of today of Count 1?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you claim in any respect you're

4    innocent of the charge in Count 1?

5              THE DEFENDANT:  No.

6              THE COURT:  How then do you plead to that charge?

7              THE DEFENDANT:  Guilty.

8              THE COURT:  All right.  Mr. Trout, have you carefully

9    gone over this plea with your client?

10             MR. TROUT:  I have, Your Honor.

11             THE COURT:  Does the plea fully accord with your

12   understanding of the facts and circumstances?

13             MR. TROUT:  It does.

14             THE COURT:  And in your opinion, is the plea

15   voluntarily and understandingly made by the defendant?

16             MR. TROUT:  It is.  And I would add that Mr. Kiriakou

17   has had time not only with me but with colleagues of mine who

18   are counsel to him in this case.  So we've had a great deal of

19   time with Mr. Kiriakou discussing this case.

20             THE COURT:  All right.  And the only other question

21   I'll just throw out there is I've had a case like this once

22   before where a spouse's pension rights might be affected by the

23   plea.  I believe in that case, the spouse had signed off on the

24   agreement.

25             Mr. Kiriakou, it really doesn't affect your

1  culpability and this plea, but I assume you have fully

2  discussed that pension ramification with your wife?

3          THE DEFENDANT:  I have, Your Honor.

4          THE COURT:  And can you represent to the Court since

5  you're under oath that she has agreed to what's in the plea

6  agreement?

7          THE DEFENDANT:  She has.

8          THE COURT:  All right.  Then based upon the answers

9  to the Court's questions, the Court is satisfied that the

10  defendant has entered his plea in a knowing and voluntary

11  fashion, with the full advice of competent counsel, and that

12  the written statement of facts, which has been fully

13  acknowledged by the defendant, is more than sufficient evidence

14  to establish guilt beyond a reasonable doubt as to Count 1, so

15  you're found guilty of that count.

16          I will enter the government's motion -- grant the

17  motion to dismiss Counts 2, 3, 4, and 5 of the indictment, so

18  they'll be dismissed right now.

19          And we need to set this case for sentencing.  We

20  still need a pre-sentence report because the Bureau of Prisons

21  needs that, and I also need it for purposes of evaluating what,

22  if any, conditions are going to be needed during supervised

23  release.  I assume you-all expected that there would be a

24  sentencing hearing?

25          MR. TROUT:  We certainly did.

1    THE COURT:  And I assume the government did as well?

2    MR. HAMMERSTROM:  Yes, Your Honor.

3    THE COURT:  All right, that's fine.

4    Have you looked at your calendars for a possible

5    date?  I think we should give the Probation Office their

6    regular time, so I know we're well into January at this point.

7    We have the 18th or the 25th of January.  What works on your

8    calendars?

9    MR. TROUT:  Either.

10   THE COURT:  Does the government have a preference?

11   MR. HAMMERSTROM:  No preference, Your Honor.

12   THE COURT:  All right, I think we'll do it on the

13   25th then.  It's at 9:00.

14   Now, Mr. Kiriakou, I really don't have to alert you

15   to this, but I do want this to be a complete record.  I assume

16   that Mr. Trout has discussed with you the implications of a

17   felony conviction in terms of employment potential down the

18   road?

19   THE DEFENDANT:  Yes, Your Honor.

20   THE COURT:  All right.  In other words, it would make

21   getting government contracts most likely quite difficult if not

22   impossible.  It may affect your ability to work with entities

23   that contract with the government.  It also could affect

24   bonding if you need bonds for any kind of work that you do.

25   And you have fully discussed that with counsel?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right, that's fine.

3          All right, when you leave court today, you need to

4   check in with Pretrial Services to advise them that the plea

5   was accepted and to give them your next court date, which is

6   Friday, January 25, at 9:00.  You then need to go over to the

7   Probation Office to enroll in the presentence investigation.

8          And I'm sure that Probation will know this, but,

9   Mr. Trout, just remind them that they'll need a probation

10  officer who has the necessary clearances, because I'm sure some

11  of the information they may need to look at might be

12  classified, all right?

13         MR. TROUT:  Very well.

14         THE COURT:  Anything further on this case?

15         MR. HAMMERSTROM:  No, Your Honor.

16         THE COURT:  No?  Then we'll recess court for the day.

17                    (Which were all the proceedings

18                     had at this time.)

19

20              CERTIFICATE OF THE REPORTER

21      I certify that the foregoing is a correct transcript of

22  the record of proceedings in the above-entitled matter.

23

24  _____/s/_____
                                Anneliese J. Thomson
25